IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Daniel C. Luberda, by his appointed agent Daniel L. Luberda, | ) ) ) Civil Action No. 4:13-cv-00897-RBH |
| Plaintiff, | ) ) ) |
| Purdue Frederick Corp., et al, | ) **O R D E R** ) ) |
| Defendants. | ) ) |

      Before the Court are [126] Motion to Dismiss filed by Defendant, Scott Fishman; [129] Motion to Dismiss filed by Defendants Perry Fine, Russell Portenoy, Alan Spanos, and Lynn Webster; [133] Motion to Dismiss filed by Individual Defendants Robin Abrams, et al and the Perdue Defendants; and [143] Motion to Dismiss filed by Defendant, Michael Friedman. A hearing was held on the motions on March 14, 2014 at 9:30 a.m. Present at the hearing were Carla Grabert-Lowenstein on behalf of the plaintiff and Susan Glenn, Erin Stuckey, Chilton Varner, Stephen Devereaux, Daniel Blanchard, and Bob Horner (appearing in place of attorney Monteith Todd) on behalf of the various defendants as reflected by the docket in this case. Attorney Jeffrey Mann, who has been admitted *pro hac vice*, appeared by telephone for Defendant Fine.

**MOTIONS TO DISMISS INDIVIDUAL DEFENDANTS**

      The individual defendants have moved to dismiss based upon their argument that the Court lacks personal jurisdiction, as they do not have contacts with South Carolina sufficient to satisfy the South Carolina Long-Arm Statute or the requirements of constitutional due process. These defendants assert by way of affidavit that they have never owned property in South Carolina; nor have they earned substantial revenue from selling goods or rendering services in the state. Many of

1

them have never been to South Carolina.  Some have traveled here on a limited basis, but none of these trips were in any way connected to the plaintiff's claims in this lawsuit.  These defendants also assert that, because the Court lacks personal jurisdiction over them under the Long-Arm Statute, Plaintiff's attempts to serve them by certified mail (or by personal service as to Defendant Michael Friedman) were invalid.[1]

---

[1] In their supplemental filings with the Court after the hearing was held on the motions to dismiss (ECF Nos. 179 and 181), many of the individual Purdue defendants also contended that (even if the Long-Arm Statute was satisfied) the plaintiff has not met the requirements under Fed. R. Civ. P. 4(e), incorporating S.C.R.C.P. 4(d)(8), for the proper method of service by certified mail and requested an order requiring Plaintiff to file proof of service within ten days or for dismissal for lack of proof of service.  Subsequently, the plaintiff filed what she had regarding proof of service.  The Court notes that many of the certified mail receipt cards do not indicate they were restricted delivery to the addressee and were signed by someone other than the addressee individual defendant.  However, this argument was not made in the Motions to Dismiss made by these defendants, other than as to individual defendants Nelson and Udell.  *See* ECF Nos. 133 and 143. (The argument was also made by Defendant Fine in his Motion to Dismiss.) (ECF No. 129) Therefore, any argument as to insufficiency of service of process as to those defendants who did not include this argument in their Rule 12(b) motions has been waived.  Fed. R. Civ. P. 12(g) provides: "Except as provided in Rule 12(g)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Rule 12(g)(2) and (3) concern motions to dismiss on the basis of failure to state a claim, to join a party under Rule 19(b), to state a legal defense, and for lack of subject matter jurisdiction.  Those defenses are not at issue here.  Rule 12(h)(1)(A) provides that "[a] party waives any defense listed in Rule 12(b)(2) to (5) by: omitting it from a motion in the circumstances described in Rule 12(g)(2)."  The Court also notes that affidavits by the defendants which are attached to #133 and 143 state that each defendant received a copy of the Summons and Complaint by certified mail, return receipt  requested (ECF No. 133-5 through 17, No. 133-19 through 21, and No. 133-23 through 24).  "A litigant [must] exercise great diligence in challenging personal jurisdiction, venue, or service of process.  If that party wishes to raise any of these defenses, that must be done at the time the first significant defensive move is made-whether it be by way of a Rule 12 motion or a responsive pleading."  5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* Section 1391.  By failing to raise this defense in the pre-answer motion, the defendants have waived this defense.  *See Pusey v. Dallas Corp*., 938 F.2d 498 (4th Cir. 1991).  The Court would have been inclined to dismiss many of these defendants on the basis of insufficiency of service of process for failing to properly serve them by certified mail, return receipt requested, delivery restricted to the addressee.  However, where the defense was not raised in the Rule 12(b) motion, the defense has been waived.  Defendants clearly knew that the defense might be available where it was raised on behalf of Defendants Nelson,  Udell, and Fine.

*Service by Certified Mail*

Plaintiff attempted to serve most of the nonresident defendants by certified mail. Fed. R. Civ. P. 4(e) provides that an individual within a judicial district of the United States shall generally be served by (1) following state law in the state where the district court is located or where service is made or (2) serving the individual personally, leaving a copy with someone of suitable age and discretion at the individual's dwelling, or serving an agent authorized by appointment or by law. South Carolina state law allows service of individuals by certified mail. S. C. R. C. P. 4(d)(8). However, service is not effective unless the certified mail is "return receipt requested and delivery restricted to the addressee." *Id*.

South Carolina Code Section 36-2-804 provides that service by certified mail may be made outside South Carolina when personal jurisdiction is allowed by the long-arm statute. Under South Carolina Code § 36-2-806(1)(c), such service must be "addressed only to the person to be served and require(s) a return receipt showing the acceptance by the defendant." The South Carolina Long-Arm Statute, S.C. Code Ann. Section 36-2-803(A) contains several subsections. Plaintiff does not dispute that Subsection (4) is the only part of the statute under which he could arguably assert jurisdiction. That subsection allows courts in South Carolina to assert personal jurisdiction over a non-resident defendant "[c]ausing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from the goods used or consumed or services rendered in this State." The individual defendants contend that this subsection is not sufficiently broad to cover their activities outside South Carolina as employees of a corporation which does business in South

Carolina.

***Law Relating to Personal Jurisdiction***. A federal "district court has personal jurisdiction over a defendant if the state courts where the federal court is located would possess such jurisdiction." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). In other words, federal district courts exercise personal jurisdiction over a defendant to the extent provided by state law, including state general jurisdiction and long-arm statutes. *Aboud*, 313 F.3d at 176; *see Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). South Carolina courts have held that the state's long arm statute is coextensive with the limits set by the due process clause. *See Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 665 S.E.2d 660, 664 (Ct. App. 2008). Thus, the statutory inquiry merges with the constitutional inquiry. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003).

In a lawsuit with multiple defendants, the court must examine each defendant's separate and distinct contacts with South Carolina individually. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Personal jurisdiction is exercised as "general jurisdiction" or "specific jurisdiction." *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp.2d 323 (D.S.C. 1999). General jurisdiction exists where a defendant has such "continuous and systematic" contacts with the forum state that it may be haled into court on any claim. *Helicopteros Nacionales deColombia, S.A. v. Hall*, 466 U.S. 408 (1984). Specific jurisdiction is narrower and exists only when the suit against the defendant arises out of his specific contacts with the forum state or is related thereto. *ESAB*, 34 F. Supp.2d at 331-32.

The party seeking to invoke personal jurisdiction over a nonresident defendant bears the burden of proving the existence of personal jurisdiction. *ESAB Group, Inc. v. Centricut, LLC*,

34 F.Supp.2d 323, 328 (D.S.C.1999). At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a *prima facie* showing of jurisdiction either in the complaint or in affidavits. In determining whether a *prima facie* showing has been made, the Court may consider the uncontroverted allegations in Plaintiff's pleading. However, whenever the allegations in Plaintiff's pleading are contested by sworn affidavit, Plaintiff can no longer rest on those allegations. Instead, it then becomes Plaintiff's burden to present an affidavit or other evidence proving that jurisdiction exists over the nonresident defendant. *See Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984); *Clark v. Remark*, 993 F.2d 228 (table), 1993 WL 134616, at *2 (4th Cir. 1993).

The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," by establishing sufficient "minimum contacts" such that maintenance of the suit does not offend traditional notions of "fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). A defendant has sufficient minimum contacts with a state only when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Fourth Circuit has articulated a three-part test for evaluating whether exercising personal jurisdiction comports with due process: (1) whether and to what extent the defendant "purposely availed" himself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally

"reasonable." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

## DISCUSSION OF EACH INDIVIDUAL DEFENDANT

**Edward Mahony, Stuart Baker, David A. Long, James Dolan, Robin Abrams, Richard S. Silbert, Craig Landau, M.D., Robert F. Kaiko, Bert Weinstein, Phillip C. Strassberger, J. David Haddox, DDS, M.D., James Heins, Curtis Wright, Charles Robert Hogen, William Mallin, Lynn Webster, M.D., Russell Portenoy, M.D., Alan Spanos, M.D. and Scott Fishman, M.D.**.

Based upon the record in this case and the arguments and briefs by counsel, the Court lacks personal jurisdiction over these above named defendants. Even if the long-arm statute could arguably allow the exercise of personal jurisdiction over them, these defendants lack minimum contacts with the state of South Carolina and, thus, haling them into court in South Carolina would violate due process. These defendants are dismissed without prejudice.

**Danielle Nelson**

According to her affidavit, Ms. Nelson retired from Purdue in June, 2007, and this lawsuit was not filed until 2013. Plaintiff attempted to serve Ms. Nelson by certified mail, return receipt requested. *See* ECF No. 180-1, p. 15. The mail was addressed to her at 201 Tresser Blvd., Stamford, CT 06901, which was apparently Purdue's address. The green card contains an illegible signature, apparently by someone at Purdue. Also, the two pertinent places on the green card do not show that delivery was restricted to her. Service was not effected on Ms. Nelson, and the lawsuit is dismissed as to her without prejudice. *See* argument in ECF No. 133, p. 60.

Additionally, based upon her uncontroverted affidavit, she lacks minimum contacts with South Carolina, and the motion to dismiss is also granted on the basis of lack of personal jurisdiction.

**Perry Fine, M.D.**

The statute permitting service by certified mail requires that it be "addressed only to the person to be served" and that "a return receipt show[s] the acceptance by the defendant." S.C. Code § 36-2-806(1)(c). Plaintiff attempted to serve Dr. Fine by certified mail on three separate occasions, however, in no instance did Dr. Fine sign for the certified mail. Fine Decl. at ¶¶ 17–20. Therefore, even if South Carolina had personal jurisdiction over Dr. Fine and thus service by certified mail was authorized, because Dr. Fine did not sign for the certified mail personally, the attempted service in this manner failed. Plaintiff's attempt to serve him by certified mail was unsuccessful, and the motion to dismiss is granted, without prejudice, as to Dr. Fine.

In addition, based upon the record in this case and the arguments by counsel, the Court lacks personal jurisdiction over Dr. Fine. Dr. Fine lacks minimum contacts with the state of South Carolina and, thus, haling him into court in South Carolina would violate due process.

**Paul Goldenheim, M.D., John N. Stewart, Michael Friedman, and Russell Gasdia**

Goldenheim, Stewart, and Gasdia each filed an affidavit with the Court stating: "I received a copy of the original Summons and Complaint by Certified Mail, return receipt requested." (ECF No. 133-8, -9, -17, -20, attached to Motion to Dismiss) Friedman stated in his affidavit in support of his motion to dismiss: " I was handed a copy of the Summons and Amended Complaint on July 9, 2013, by a Connecticut Marshal, at my home." (ECF No. 143-1) Sufficiency of service of process on these defendants was not contested in the motion to dismiss.

However, each defendant has requested the Court to dismiss them based on lack of personal jurisdiction.

Friedman's affidavit indicates that he was employed in various positions with the Purdue entities from June 1985 until July 2007 and that, at the time he left Purdue, he was President, Chief Executive Officer. (ECF No. 143-1) Friedman entered a guilty plea in 2007 to the strict liability misdemeanor offense of misbranding a drug in violation of 21 U.S.C. §§ 331(a) and 333(a)(1). (Attachment to Amended Complaint, ECF No. 15) The affidavit of Paul Goldenheim states that he was employed with Purdue from 1985 until May 31, 2004. At the time he left Purdue, he was the Executive Vice President, Wordwide Research & Development and Chief Scientific Officer. (ECF No. 133-9) Goldenheim also entered a guilty plea to the misdemeanor offense of misbranding. (ECF No. 151-5) The affidavit of Russell J. Gasdia indicates that he is the Vice President, Sales and Marketing for Purdue Pharma L.P. and that he has been employed by Purdue since September 1985. (ECF No. 133-8) John H. Stewart's affidavit indicates that he is President and CEO of Purdue Pharma L.P. and that he has served in that position since June, 2007. (ECF No. 133-20)

In *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052 (4th Cir. 1983), the Fourth Circuit cited with approval *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980), which held that direct personal involvement by a corporate agent in a tort committed in the forum state exists when "the defendant [agent is] the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Id*. Here, it is unclear what involvement each of these defendants may have had in the decision-making regarding the marketing of OxyContin. The gravamen of this lawsuit appears to be based on the alleged misbranding and misrepresentations made in the marketing of OxyContin. Therefore, the Court will allow the

8

plaintiff to conduct jurisdictional discovery as to Friedman, Stewart, Gasdia, and Stewart. Also, with regard to these defendants, the motion is denied without prejudice to their right to raise personal jurisdiction again at the summary judgment stage.

**Howard Udell**

This defendant was dismissed at the hearing in this matter with consent of the plaintiff.

**MOTIONS TO DISMISS AS TO SUFFICIENCY OF PLEADING NEGLIGENCE, GROSS NEGLIGENCE, AND FRAUD (FIRST, SECOND, AND THIRD CAUSES OF ACTION)**

The United States Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Defendants contend that Plaintiff's negligence and gross negligence claims do not satisfy Fed. R. Civ. P. 8 and lack facial plausibility. A negligence claim consists of three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *Crolley v. Hutchins*, 387 S.E.2d 716, 717 (S.C. Ct. App. 1989).

Defendant asserts that Plaintiff's negligence based claims arise from failure to properly warn concerning the risks associated with taking Oxycontin. The negligence cause of action in Paragraph 62 of the Amended Complaint alleges that "Defendants owed Plaintiff a duty to properly warn of the potential for and/or risk of addiction associate (sic) with their product." They allegedly breached this duty by failing to properly warn of the potential for addiction in the way they "labeled,

9

marketed and misbranded their product." The breach was allegedly the direct and proximate cause of the plaintiff's injuries. Defendants, however, contend that South Carolina law does not impose on manufacturers a duty to warn patients directly; they only have a duty to warn physicians, who are learned intermediaries. Therefore, in order to state a claim, defendants argue that the complaint must contain sufficient allegations that Purdue failed to warn Dr. Chambers, Luberda's physician who prescribed him the Oxycontin.

A prescription drug manufacturer's duty to warn is governed by the learned intermediary doctrine, under which a manufacturer has a duty to warn only a prescribing physician of the risks associated with a drug. The physician serves as an intermediary between the manufacturer and the patient. *Brooks v. Medtronic, Inc*., 750 F.2d 1227 (4th Cir. 1984)(predicting South Carolina law)[2]. In addition to showing that a drug manufacturer's warning was inadequate, a plaintiff in a failure to warn case must also show that the inadequacy of the warning was the proximate cause of the plaintiff's injury. To do so, the plaintiff must show that the undisclosed risk was sufficiently high that it would have changed the doctor's decision. *Odom v. G.D. Searle & Co*., 9l79 F.2d 1001, 1003 (4th Cir. 1992).

The Court agrees with the defendants that the plaintiff has not stated a claim for negligence or gross negligence because he has not alleged that his physician would have changed his prescribing decision had there been a different warning. The Court will allow the plaintiff to file a Second Amended Complaint amending his negligence and gross negligence claims in accordance

---

[2] The Court is not aware of any decision by the South Carolina Supreme Court or the South Carolina Court of Appeals rejecting the learned intermediary doctrine in a prescription drug case. The doctrine was applied to a claim against a pharmacist in *Madison Am. Home Prods. Corp*., 358 S.C. 449, 595 S.E.2d 493, 496 (2004). *See also, Carnes v. Eli Lilly and Co*., No. 0:13-591-CMC, 2013 WL 6622915 (D.S.C. December 16, 2013).

10

with the learned intermediary doctrine.

When a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires courts to apply a heightened pleading standard to those claims. Rule 9(b) requires that, when "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *Id.* The heightened pleading standard contained in Rule 9(b) requires plaintiffs to plead with particularity "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)(quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 at 590 (2d ed. 1990)).   In order to prove fraud, the following elements must be shown by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993).  In addition to pleading these elements, the plaintiff must plead facts in accordance with the learned intermediary doctrine[3] regarding the misrepresentation or failure to disclose to Luberda's physician and the other elements of fraud including reliance by the physician on the misrepresentations.  The Court will allow the plaintiff to file a Second Amended Complaint amending the fraud claim as discussed herein.

The plaintiff is granted leave to file a Second Amended Complaint within 15 days to address

---

[3] The Fourth Circuit has applied the learned intermediary doctrine to a fraud case brought under Virginia law.  This Court predicts that South Carolina courts would also apply the doctrine in a fraud case regarding prescription drugs involving misbranding or the failure to warn. *See Talley v. Danek Medical, Inc.*, 179 F.3d 154 (4th Cir. 1999).

the deficiencies noted and reflecting the dismissal of individual defendants as ordered.

## MOTION TO DISMISS FOURTH CAUSE OF ACTION FOR VIOLATION OF S.C. CODE § 39-23-80

Defendants also assert that there is no claim for negligence *per se* under S.C. Code Ann. § 39-23-80, a criminal statute addressing the misbranding of drugs. Plaintiff contends that the theory of negligence *per se* applies anytime a statute is violated and results in tortious injury. "Negligence *per se* is established by showing a statute created a duty to the plaintiff and the defendant breached that duty by violating the statute." *Seals by Causey v. Winburn*, 314 S.C. 416, 445 S.E.2d 94 (Ct. App. 1994). After establishing negligence *per se*, a plaintiff must prove that violation of the statute was causally linked to the injury. *Id*. Defendants cite *Williams v. Hill Mfg. Co., Inc*., 489 F. Supp. 20 (D.S.C. 1980) which found that South Carolina has adopted the statutory purpose doctrine and applied three tests in applying it: (1) whether the legislature intended to create a private rather than public liability; (2) whether the person injured is a person or member of a class for whose benefit the law was intended to protect; and (3) whether the injury complained of was the type the statute was intended to prevent. The Court has been furnished no authority indicating that the South Carolina legislature intended to create a private cause of action for violation of this statute. Therefore, the Fourth Cause of Action is dismissed.

## MOTIONS TO DISMISS BY PURDUE DEFENDANTS AND DEFENDANT FRIEDMAN AS TO STATUTE OF LIMITATIONS

The defendants assert that the entire case should be dismissed as barred by South Carolina's 3-year statute of limitations for personal injury actions, S.C. Code Ann. § 15-3-530(5). They further cite S.C. Code Ann. § 15-3-535, providing that a personal injury action must be brought

"within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." *See also*, Code Section 15-3-530(7) providing a three year statute of limitations for a fraud action, "the cause of action in the case not considered to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

A defendant's statute of limitations affirmative defense can be raised in a 12(b)(6) motion to dismiss; however, it is seldom appropriate to do so. "A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredricksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Accordingly, a statute of limitations defense must "clearly appear[] on the face of the complaint." *Id*. In other words, the complaint must clearly "allege all facts necessary to the affirmative defense." *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007) (citing *Forst*, 4 F.3d at 250).

The Amended Complaint alleges in ¶ 55 that "[b]y October of 2004 Daniel C. Luberda became involuntarily addicted to OxyContin; and while suffering involuntary addiction, and to satisfy the addiction, Daniel C. Luberda took OxyContin that was not prescribed for him for his own use, and did use this Oxycontin to satisfy his own involuntary addiction." The Amended Complaint also alleges in ¶ 59 that Luberda was arrested on December 21, 2010 and began serving his five year federal sentence on August 19, 2011. Defendants assert that the only plausible inference from the above allegations is that Luberda knew or should have known by late 2004 that he was "having problems" with Oxycontin. He filed the lawsuit in state court on February 28, 2013. (The case was removed to this court on April 3, 2013.) Therefore, Defendants assert that the lawsuit is barred by the statute of limitations.

Defendants have cited many cases from states other than South Carolina, most of which

dealt with motions for summary judgment or directed verdicts at trial. However, the most analogous reported South Carolina cases appear to be *Preer v. Mims*, 323 S.C. 516, 476 S.E.2d 472 (1996)[4] and *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672 (2000).

In *Preer*, a patient brought a medical malpractice action against his physician claiming that he had become addicted to the prescription drug Vicodin as a result of the physician's negligence. The physician moved for directed verdict at trial on the basis of the medical malpractice statute of limitations, S.C. Code § 15-3-545(A). Under that code section, any action for medical malpractice "must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section." The trial court ruled that Preer knew or reasonably should have discovered this cause of action by March of 1990, as shown by the evidence at trial. Therefore, the statute of limitations began to run at that time. He did not initiate the lawsuit until April of 1993; accordingly, the court found the action was barred by the statute of limitations. On appeal, the South Carolina Supreme Court held:

> "Because **Preer had knowledge of his addiction**, and hence, knowledge of Mims's negligence, by March 1990, the statute of limitations began running at that time, and any action after March 1993 would be barred. . . accordingly, he is barred by the statute of limitations."

*Preer*, 476 S.E.2d at 474 (Emphasis added).

---

[4] Similarly, the South Carolina Court of Appeals affirmed a grant of motion for directed verdict at trial on the basis of the statute of limitations in *Wilson v. Shannon*, 299 S.C. 512, 386 S.E.2d 257 (Ct. App. 1989). In that case, the court found that facts actually known by plaintiff were sufficient to put a person of common knowledge and experience on notice that doctor had improperly prescribed Valium.

14

In *Moriarty*, a repressed memory case, the South Carolina Supreme Court reviewed the law concerning the discovery rule and held that the Court of Appeals properly reversed the trial court's grant of summary judgment to the defendant on the basis of the statute of limitations. The court held that the discovery rule may toll the statute of limitations during the period a victim psychologically represses her memory of sexual abuse. The court noted that under South Carolina Code section 15-3-535, "the statute of limitations is triggered not merely by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another." *Id.*, 534 S.E.2d at 676, citing *Wiggins v. Edwards*, 314 S.C. 126, 442 S.E.2d 169, 170 (1994). Importantly, the *Moriarty* court refers to "whether a reasonable person **in her circumstances** would have been on notice by a certain date". (Emphasis added)

The statute of limitations thus begins to run either when the injured party knows that he is addicted to a drug or when a reasonable person in the addicted person's circumstances would have been on notice that he was addicted. Therefore, the allegations of the Amended Complaint in this case are not sufficiently clear that the case is barred by the statute of limitations. It merely alleges that Plaintiff became involuntarily addicted by October of 2004, not that the plaintiff knew he was addicted or that a reasonable person in his circumstances would have known that he was addicted. This may at a later time in the case be a viable defense. However, the motions to dismiss under Rule 12(b)(6) based upon the statute of limitations, at this stage, are denied.

## Conclusion

For the reasons stated herein, the Court dismisses this action without prejudice as to Defendants Edward Mahony, Stuart Baker, David A. Long, James Dolan, Robin Abrams, Richard

15

S. Silbert, Craig Landau, M.D., Robert F. Kaiko, Bert Weinstein, Phillip C. Strassberger, J. David Haddox, DDS, M.D., James Heins, Curtis Wright, Charles Robert Hogen, Danielle Nelson, William Malin, Perry Fine, M.D., Lynn Webster, M.D., Russell Portenoy, M.D., Alan Spanos, M.D., and Scott Fishman, M.D.  The motion to dismiss is denied as to Defendants Paul Goldenheim, M.D., Michael Friedman, Russell Gasdia, and John N. Stewart.  The plaintiff is allowed to engage in jurisdictional discovery as to these defendants during the general discovery period in the case.  The motions to dismiss by the Purdue Defendants and Defendant Friedman on the basis that the negligence, gross negligence, and fraud claims fail to state a claim are denied, and the plaintiff is given leave to file a second amended complaint addressing the pleading deficiencies argued by the defendants as to those claims within 15 days.  The plaintiff's Motion for Appointment of Guardian ad Litem (ECF No. 183) is granted, and Daniel L. Luberda as Guardian ad Litem for Daniel C. Luberda is substituted as Plaintiff.  The motions to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of the statute of limitations are denied.

     AND IT IS SO ORDERED.

March 28, 2014            s/R. Bryan Harwell  
Florence, SC            R. Bryan Harwell  
           United States District Judge