IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Daniel L. Luberda *as Guardian ad Litem for Daniel C. Luberda*, <br><br> Plaintiff, <br><br> v. <br><br> Purdue Frederick Corp., Purdue Pharma L.P., The Purdue Pharma Company, Purdue Pharmaceutical Products L.P., Purdue Pharma Technologies Inc., Purdue Pharma of North Carolina Limited Partnership, Purdue Pharmaceutical Laboratories Limited Partnership, Purdue Products L.P., Purdue Pharmaceuticals Limited Partnership, Michael Friedman, Paul Goldenheim, M.D., John N. Stewart, and Russell Gasdia, <br><br> Defendants. | Civil Action No.: 4:13-897-BHH <br><br><br><br> **OPINION AND ORDER** |

This matter is before the Court on the defendants' motion to dismiss. (ECF No. 192.) The defendants removed this product liability action from the Horry County Court of Common Pleas on April 3, 2013. The defendants ask that the complaint be dismissed with prejudice for failure to state claims for fraud and negligence and for failure of the plaintiff to cure the deficiencies in the Complaint concerning the same.

### STANDARD

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to

relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009). Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed.R.Civ.P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

**DISCUSSION**

The plaintiff in this action asserts that a prescription of OxyContin in 2004 caused him to become an addict and led to his incarceration. The plaintiff brings causes of action for fraud, negligence, and gross negligence. In response to the defendants' motions, the Honorable Bryan Harwell previously dismissed various claims and defendants and ordered the plaintiff to re-plead his remaining claims with the particularity required by Rule 9(b) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). (ECF No. 186.) Specifically, with respect to fraud, the Court required the plaintiff to allege facts, with the particularity required by Rule 9(b). *Id.* at 11. Because this is a pharmaceutical product liability case, the Court also ordered the plaintiff to plead these requirements as to statements made to the plaintiff's physician, Dr. Thomas J. Chambers. *Id.* With respect to the negligence claims, the Court ordered the plaintiff to plead facts plausibly establishing that Dr. Chambers would have made a different prescribing decision had he received an allegedly appropriate warning. *Id.* at 9-10. The plaintiff has now filed a Second Amended Complaint. (ECF No. 191.) The defendants disagree that it cures the deficiencies identified by the Court in either the fraud or negligence claims. The Court would address each cause in turn.

**I.     Fraud**

The defendants first reiterate their motion that the plaintiff's fraud claim be dismissed. In order to prove fraud, the following elements must be shown by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the

representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.  *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993).  Judge Harwell previously found that, to satisfy Rule 9(b), the plaintiff must "plead with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  (Doc. 186 at 11 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).)  The Court found that the plaintiff's Complaint was insufficient in this regard and gave leave for amendment.  The plaintiff contends that paragraphs 30 through 39 of the Second Amended Complaint now satisfy this demand.  The Court essentially agrees.

The plaintiff has identified the content of the fraudulent statements.  (Compl. ¶ 30.)  And, the plaintiff has now specifically pled that such fraudulent statements were made directly to the plaintiff's prescribing physician, Dr. Thomas J. Chambers, in South Carolina.  *Id.* ¶¶ 28, 36.  The timeframe, while not to the astrologicical pinpoint, is sufficiently implied.  *Id.* ¶¶ 38, 43.  And, the plaintiff has averred that he relied on such fraudulent statements as translated through Dr. Chambers.  (Compl. ¶ 43.)

But, the Court previously ruled that the plaintiff was required to plead, pursuant to the demands of the Learned Intermediary doctrine, reliance by *Dr. Chambers* on the allegedly fraudulent statements (ECF No. 186 at 11).  *See Talley v. Danek Medical, Inc.*, 179 F.3d 154 (4th Cir. 1999).  The Court said specifically, "The plaintiff must plead facts in accordance with the learned intermediary doctrine regarding the misrepresentation or failure to disclose to Luberda's physician and *the other elements of fraud including reliance by the physician on the misrepresentations*."  (ECF No. 186 at 11 (emphasis added).)  The

plaintiff was given specific leave to so conform his pleading. *Id.* The defendants would argue that the plaintiff's Second Amended Complaint, in this respect, is largely unchanged. And, while the plaintiff has arguably not used the most express language, the sum effect of his accusations is to contend that Dr. Chambers, over the more express written warnings on the drug label, relied precisely on the kind of ameliorating but fraudulent representations in prescribing OxyContin, which the plaintiff alleges and the defendants have officially confessed. (See Compl. ¶¶ 24-28, 31, 36, 43.) That is the plain meaning of the Complaint – that physicians, and thereby patients, were misled in their reliance on these admitted representations. *Id.* Ultimately, it would be a more tortured reading of the Complaint to find no allegation of reliance by Dr. Chambers than to find one.

But, it is certainly a close call. And, whether, as an evidentiary matter, the plaintiff can ever establish such reliance is to be seen. At this stage, however, the Court would allow the claim to proceed refusing to be too eager to dismiss a fairly specific claim of fraud that does not, in its language, meaningfully prejudice the defendants' ability to understand what they are accused of or defend against it. If Dr. Chambers did not rely on such representations, it will be readily established in discovery and decided at summary judgment or in settlement.

## II.    Negligence

The defendants have also renewed their motion to dismiss the plaintiff's negligence claim. A negligence claim consists of three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *Crolley v. Hutchins*, 387 S.E.2d 716, 717 (S.C. Ct. App. 1989). With respect to the pleading of that claim, the Court previously found

one deficiency:[1] "The Court agrees with the defendants that the plaintiff has not stated a claim for negligence or gross negligence because he has not alleged that his physician would have changed his prescribing decision had there been a different warning." (Doc. 186 at 10.) To do so, the plaintiff must show that the undisclosed risk was sufficiently high that it would have changed the doctor's decision. *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992).

The plaintiff alleges that, in the absence of the defendants' deficient warning, Dr. Chambers would have: (1) "prescribed Plaintiff OxyContin in [a different] manner and dosage;" and (2) "properly monitored" Plaintiff "subsequent to the prescription . . . ." (Compl. ¶ 50(d).) The defendants contend that these allegations do not reflect a likelihood of a "material" change in the doctor's decision; are too vague; and suggest a prescribing decision already advised by the "black box" warning provided. The Court does not believe precise dosage levels or the details of a monitoring plan are necessary at this stage. (See ECF No. 192 at 12.) The Court disagrees that the alleged change in the prescriptive treatment is not material under the law as presently alleged. A lesser dosage more carefully policed may have made all the difference. And, simply because the included black box warning already invited the lowest effective prescription and a recommendation to monitor does not mean that Dr. Chambers would not have additionally modified the manner

---

[1] The defendants claim there were two, and that the Court also demanded amended allegations concerning some actual failure of the defendants to warn. The defendants have spent significant time arguing that a warning was given in the "black box" labeling, which indicated the pharmaceutical risks. But, the undersigned's reading of the Order is that the plaintiff was only required to address the issue of whether Dr. Chambers would have prescribed differently. The undersigned would consider the Court's ruling on this issue "the law of the case," and as an exercise of discretion would be constrained by the same. *See City of Charleston, S.C. v. Hotels.com*, LP, 520 F. Supp. 2d 757, 774 (D.S.C. 2007). The plaintiff was entitled to rely on this expectation in his attempted amendment.

and degree of those items if the full extent of the drug's effects had not been obscured by the admitted misrepresentations about them.

The Court will allow the claim to continue.

## **CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss (ECF No. 192) is DENIED.

IT IS SO ORDERED.

s/Bruce Howe Hendricks
United States District Judge

October 7, 2014
Florence South Carolina